UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Manuel AVILA-HEBRA,<br><br>                                    Petitioner,<br><br>v.<br><br>Kristi NOEM, et al.,<br><br>                                    Respondents. | Case No.: 25-cv-3140-AGS-BJW<br><br>**ORDER GRANTING MOTION TO APPOINT COUNSEL (ECF 2) AND REQUIRING RESPONSE** |

     Petitioner Manuel Avila-Hebra requests appointed counsel and emergency injunctive relief in support of his habeas corpus petition. (*See* ECF 2, 3); *see also* 28 U.S.C. § 2241 (habeas corpus). For the reasons below, the Court will grant the motion to appoint counsel and order a response to the petition and to the injunctive-relief request.

**A.     Appointed Counsel**

     Courts may appoint an attorney for an "impoverished habeas petitioner" when "the interests of justice so require." *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir. 1984) (cleaned up); *see also* 18 U.S.C. § 3006A(a)(2)(B). In this assessment, courts evaluate a petitioner's (a) "likelihood of success on the merits" and (b) "ability . . . to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

     As a threshold matter, Avila-Hebra sufficiently alleges that he "cannot afford an attorney." (*See* ECF 1, at 30.) Prior to his detention, he made "$2,100" a month working at "Manuel Diaz Farm" (*id.*), does not own a home (*id.*), has an old-model pickup truck and a 2021 car he still owes most of the value on (*id.*), and "has no savings" (ECF 2, at 4).

     Turning to his likelihood of success, Avila-Hebra argues that he will establish that his continued custody is unlawful because, among other things, the government failed to comply with its own regulations in detaining him. (ECF 1, at 12.) Based on the current record, Avila-Hebra has a point. According to the regulation at issue here, ICE "may revoke an alien's release" and "return the alien to custody" for certain specified reasons. 8 C.F.R.

1

§ 241.13(i)(1)–(2). But the regulation requires that "the alien will be notified of the reasons for revocation of his or her release," and then ICE must "conduct an initial informal interview promptly after his or her return to [ICE] custody[.]" 8 C.F.R. § 241.13(i)(3). Yet, according to Avila-Hebra, he "was never told the reasons for [his] detention" nor "given an interview" to challenge that detention. (ECF 1, at 29.)

Courts have routinely found that when "ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting habeas petition due to ICE's failure to "follow" its "own regulations" and collecting cases); *see also United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations."); *Mendez v. Immigration & Naturalization Serv.*, 563 F.2d 956, 959 (9th Cir. 1977) ("[C]ourts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard."). In fact, the "norm when ICE fails to conduct an informal interview promptly is that courts across the country have ordered the release of individuals stemming from ICE's illegal detention." *Soryadvongsa v. Noem*, No. 25-cv-2663-AGS-DDL, 2025 WL 3126821, at *3 (S.D. Cal. Nov. 8, 2025) (cleaned up).

The complexity of the legal issues also favor appointing an attorney. The parties here must interpret intricate statutes, grapple with detention-related common law, and navigate agency regulations. *See, e.g.*, 8 U.S.C. § 1231(a)(6); *Zadvydas*, 533 U.S. at 690; 8 C.F.R. § 241.13(i). This undertaking is within the immigration legal context, which has "provoked comparisons to a morass, a Gordian knot, and King Minos's labyrinth in ancient Crete," *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (cleaned up), and been deemed "second only to the Internal Revenue Code in complexity," *United States v. Ahumada-Aguilar*, 295 F.3d 943, 950 (9th Cir. 2002) (quotations omitted).

While Avila-Hebra's habeas petition and motions sensibly grapple with these complex issues, "Federal Defenders of San Diego, Inc.," "drafted the instant petition" and

2

offered "assistance" with all filings. (ECF 2, at 1 n.1.) Without that aid, it's not clear that Avila-Hebra would have successfully framed these arguments himself. After all, he is a farm worker who lacks "any legal education," does not have "unrestricted access to the internet in custody," and does not "speak much English." (ECF 1, at 30.) So, he has adequately shown that he cannot articulate his claims without a lawyer. *See, e.g.*, *Nguyen v. Warden*, No. 25-cv-2441-AGS-MMP, 2025 WL 2971654, at *2 (S.D. Cal. Oct. 21, 2025) (appointing counsel for a habeas petitioner whose claims implicated similar immigration authorities).

Avila-Hebra's attorney-appointment request is **GRANTED**. As Federal Defenders of San Diego has expressed its willingness to represent Avila-Hebra, it is appointed to represent him.

**B.    Habeas Screening**

Finally, given Avila-Hebra's likelihood of success, as discussed above, his habeas petition necessarily survives the required screening for "frivolous" or "incredible" habeas applications. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 4; *id.*, Rule 1(b) (permitting use of Rules Governing Section 2254 Cases to any "habeas corpus petition"); *Neiss v. Bludworth*, 114 F.4th 1038, 1045 (9th Cir. 2024).

By **November 18, 2025**, respondents must answer the petition as well as the injunctive-relief motion. Any reply is due **November 21, 2025**. The Court will hold oral argument on **November 26, 2025**, at **11:00 a.m.**

Dated: November 14, 2025

_____
Hon. Andrew G. Schopler
United States District Judge